UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                                                      :
IRIS JIMENEZ,                                                         :
                                                                      :
                                    Plaintiff,                        :
                                                                      :                    24-cv-7385 (LJL)
                      -v-                                              :
                                                                      :              OPINION AND ORDER
GWB ACQUISITIONS LLC and THE GAP, INC.,                               :
                                                                      :
                                    Defendants.                       :
                                                                      :
----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendants The Gap, Inc. ("The Gap") and GWB Acquisitions LLC ("GWB," and with

The Gap, "Defendants") move, pursuant to Federal Rule of Civil Procedure 56, for an order

granting them summary judgment or in the alternative striking Plaintiff's request for damages.

Dkt. No. 53. For the reasons that follow, the motion for summary judgment is granted. The

Clerk of Court is directed to enter judgment for Defendants on Plaintiff's federal claim. The

Court declines to exercise supplemental jurisdiction over Plaintiff's New York State and New

York City claims.

## BACKGROUND

The following facts are undisputed for purposes of this motion.

The Gap owns and operates a retail clothing store, The Gap Factory (the "Store"), located

at 4211 Broadway, New York, New York (the "Property"). Dkt. No. 57 ¶¶ 2–3. The Store is

located in the George Washington Bridge Bus Station Market (the "Market"), a 120,000-square-

foot retail mall that serves as a component of the George Washington Bridge redevelopment

project in the Washington Heights neighborhood of Manhattan. *Id.* ¶ 4. The Market was

designed and constructed for first possession after January 26, 1993.  *Id.* ¶ 5.  The Store was built out in 2014 and 2015.  *Id.* ¶ 7.  GWB leases the Property to The Gap and is its landlord.  *Id.* ¶ 6.

Plaintiff Iris Jimenez ("Plaintiff") is a resident of New York City who suffers from medical conditions that inhibit her walking and restrict her body movement and range.  *Id.* ¶¶ 10–11.  She has been and remains a wheelchair user for mobility.  *Id.* ¶ 10.  In her complaint, she alleges that Defendants have committed four accessibility violations in contravention of the federal Americans with Disabilities Act ("ADA") and New York State and New York City law.  *Id.* ¶ 20; *see* Dkt. No. 1 ¶ 23.  The alleged violations largely concern the accessibility of routes throughout the Store, including routes from the first floor to the second floor.  Dkt. No. 1 ¶ 23.  The complaint alleges that:

> I.  There is no accessible route within the Gap Factory premises connecting all the public accommodations within the site.  Defendants fail to provide that there is one accessible route connecting all the public accommodations within the site.  *See* 1991 ADA §§ 4.3.2, 4.1.2(2), and 4.1.3(1); 2010 ADA §§ 206.1 and 206.2; 1968 BC §27- 292.5; 1968 Ref Std § 4.3.2; 2008 BC § 1104; and 2014 BC § 1104.
>
> II.  There is no accessible route within the Gap Factory premises that coincides with the general circulation path.  Where circulation paths are interior, required accessible routes shall also be interior.  Defendants do not provide an accessible route within the retail facility that coincides with the general circulation path used by patrons.  *See* 1991 ADA § 4.3.2(3); 2010 ADA §§ 206.1; 206.2; 206.2.2 and 206.3; 1968 BC§ 27-292.5(b); 2008 BC §§ 1104.2; 1104.3; 1104.4 and 1104.5 and 2014 BC §§ 1104.2; 1104.3; 1104.4 and 1104.5.
>
> III.  Defendants fail to provide an elevator within the Gap Factory premises to create an accessible route between the first and second floor levels.  Defendants fail to provide an accessible route to each level required to be accessible.  *See* 1991 ADA §§ 4.1.3(5); 4.1.6(1)(f); and 4.3.8; 2010 ADA § 206.2.3; 1968 BC §27-292.5; 2008 BC §1104.4 and 20148 BC § 1104.4.
>
> IV.  The staffed service counters are more than 36 inches high.  Defendants fail to provide that an accessible portion of the (sales or service) counter surface is 36 inches high maximum above the finish floor.  *See* 1991 ADA § 7.2; 2010 ADA §§ 904.4.1 and 904.4.2; 1968 BC § 27- 292.1; 2008 Ref Std §§ 904.3.1 and 904.3.2; and 2014 Ref Std §§ 904.3.1 and 904.3.2.

*Id.* (citations and emphasis omitted).

2

Plaintiff further alleges that there exist numerous "inaccessible features of the Gap Factory premises," although the only one mentioned with any factual specificity in the complaint is the lack of an "internal accessible route between the first and second floor of the Gap Factory premises." *Id.* ¶¶ 41–42. The complaint asserts that if Plaintiff is on the first floor and desires to shop on the second floor or vice versa, she must exit the Store. *Id.* ¶ 42. In addition, Plaintiff's expert alleges certain barriers discovered upon inspection of the Property—including ones that do not implicate Plaintiff's specific disability—which were not pleaded in the complaint. Dkt. No. 57 ¶ 21.

This case principally concerns a mixture of the first, second, and third allegations in Plaintiff's complaint—namely, whether there is an accessible route connecting the public accommodations on the first floor with those on the second, and whether that route coincides with or is in the same area as "the general circulation path."[1] Understanding this issue requires understanding the layout of the Store and the Property.

The Store has two floors, both with retail goods available for sale to customers. Customers enter the Store on the first floor through an entrance from the street at 4211 Broadway. Dkt. No. 66-1 at 2. From within the Store, the second floor can be accessed via an elevator that rests upon a raised platform that is centrally located in the middle of the sales floor and visible from the entrance. Dkt. Nos. 68 ¶¶ 4–5. The elevator landing is accessible by climbing a set of stairs. *Id.* ¶ 8. Alternatively, there is a route to the landing if one makes an immediate right turn upon entering the Store, follows a ramp which runs around the perimeter of the Store, and then makes an immediate left turn. The ramp is available for use by any customer,

_____

[1] It is undisputed that the staffed service counters are at a height of 36 inches or less and thus do not violate Title III of the ADA or any of the state or city accessibility laws asserted by Plaintiff. Dkt. No. 56 ¶ 6; Dkt. No. 68 ¶ 3.

although the parties dispute whether it is "accessible" within the meaning of the relevant regulations and statutes. *Id.* ¶ 13; Dkt. No. 56 ¶ 7. There is also a stairwell from the elevator landing that goes to the second floor. Dkt. No. 66-1 at 2.

Plaintiff's expert provides the following description of the layout:

The Broadway entrance to the Gap Factory Store enters directly from the street into the store. The second-floor retail space for the Gap Factory Store is accessed at the back of the first floor sales area directly opposite the main entrance, up a centrally located stair. The designated accessible route to the second floor is to the right upon entering, and uses a ramp that is approximately the length of the first floor of the store, and which is hidden behind a wall used for merchandise displays and shelving. The route then passes through two doors, entering and exiting an enclosed exit stairwell, then to an elevator. The ramp is generally not visible from the main entrance and retail area of the store. The stair along the general circulation route is not enclosed and the path to the elevator via the stairs is generally visible from the entrance and store interior.

Dkt. No. 55-1 at 3.

The following floor plan depicts the designated accessible route in blue:



Dkt. No. 68 ¶ 6. From no earlier than April 23, 2024, directional signage has specified the location of the elevator and ramp. *Id.* ¶ 7.

4

Plaintiff testified that she lives about three to four blocks from the Store and has been to the Store multiple times over the years, although she does not remember exactly when she last visited. Dkt. No. 57 ¶ 12; Dkt. No. 65-2 at 31:5–14, 51:8–11. She believes that it "must have been last year sometime." Dkt. No. 65-2 at 31:5–32:14. She did not know that the Store had a second floor until two or three years ago and has "never seen an elevator or a ramp or anything of that nature" in the Store. *Id.* at 37:21–38:5, 40:4–41:4, 43:8–24. Plaintiff further testified that on an unspecified date "maybe five years ago," an individual told her that there was an elevator at the Property but that Plaintiff would not have access to it. *Id.* at 39:3–44:5. During her deposition, Plaintiff was shown a video of the Property depicting the ramp, and she testified that it "looks safe" but that she would "have to try it" to be sure. *Id.* at 106:4–107:15.

Plaintiff's summary judgment papers can be understood to assert that the designated accessible route discriminates against her and others with mobility issues in several related respects. First, while a person who is not disabled and wishes to access the elevator from the interior of the Property need only walk up the stairs in the center of the Store (a distance of 17 feet and 6 inches from the bottom of the stairs to the elevator), "a person in a wheelchair shopping at the store . . . must turn around, go back to the front of the store, find the entry to the obscured ramp in the corner of the store" and then follow the ramp before accessing the platform. Dkt. No. 64 at 2, 5–6, 11. Second, Plaintiff contends that the ramp is not visible from the store floor. While the stairs along the general accessibility route are visible to a customer on the store floor, the entrance to the ramp is only visible from one vantage at the Store's entrance. Third, she argues that the accessible "route provides customers who use it with an inferior experience." *Id.* at 14. A customer who is in the Store and wants to use the accessible route to access the second floor has "to find the newly installed signs at the stairs that take them back to

5

the entrance of the store" and then find the ramp which is "isolated and obscured from the sales floor behind a solid merchandise wall," and follow a route that is "circuitous" and runs through "an enclosed exit stairwell." *Id.* at 2, 5, 14.

## PROCEDURAL HISTORY

Plaintiff filed this complaint on September 30, 2024. Dkt. No. 1. She asserts claims under Title III of the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the New York State Civil Rights Law ("NYSCRL"). *Id.* Defendants answered the complaint on January 10, 2025. Dkt. No. 23.

On November 21, 2025, Defendants filed the instant motion for summary judgment or, in the alternative, to strike Plaintiff's request for damages. Dkt. No. 53. Defendants also filed a memorandum of law in support of the motion, a Rule 56.1 statement, and the declarations of Beth S. Joseph and Mark Jackson. Dkt. Nos. 54–56, 58. The parties filed a joint statement of undisputed facts pursuant to Local Rule 56.1. Dkt. No. 57. On December 12, 2025, Plaintiff filed a memorandum of law in opposition to the motion, a counterstatement to Defendants' Rule 56.1 statement, and the declarations of Plaintiff, Susan K. Smith, and Jonathan White. Dkt. Nos. 64–68. On December 19, 2025, Defendants filed a reply memorandum of law in further support of their motion. Dkt. No. 69. The Court heard oral argument on January 15, 2026.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could

6

return a verdict for the nonmoving party." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009). At this stage, the Court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in [her] favor." *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

## DISCUSSION

Defendants argue alternatively that the Court should dismiss this case for lack of Article III standing or grant them summary judgment on the basis that the evidence construed favorably to Plaintiff fails to show a violation of the ADA. Dkt. No. 54 at 7–15; Dkt. No. 69 at 1–7. Defendants also argue that: (1) Plaintiff has not established a claim under the NYSHRL, the NYCHRL, or the NYSCRL; (2) Plaintiff cannot proceed under the NYSCRL because she did not serve the Attorney General of the State of New York on or before the commencement of this action; and (3) Plaintiff is not entitled to money damages under the ADA or New York State or New York City law. Dkt. No. 54 at 16–19; Dkt. No. 69 at 7–10.

## I.    Standing

Defendants first argue that Plaintiff lacks standing under the ADA. Dkt. No. 54 at 7–9; Dkt. No. 69 at 1–4. "Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The standing requirement contains three elements: (1) "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560–61 (citations and internal quotation marks

7

omitted).  The party invoking federal jurisdiction bears the burden of establishing the elements of standing.  *Id.* at 561.  "At the summary judgment stage, a court cannot merely rely on the allegations in a plaintiff's complaint to establish standing; rather, to defend against summary judgment for lack of standing, a plaintiff must set forth by affidavit or other evidence specific facts supporting standing, as is generally required under Rule 56."  *Perdum v. Forest City Ratner Cos.*, 174 F. Supp. 3d 706, 714 (E.D.N.Y. 2016) (cleaned up and citation omitted), *aff'd*, 677 F. App'x 2 (2d Cir. 2017) (summary order); *see also NRDC, Inc. v. U.S. FDA*, 710 F.3d 71, 79 (2d Cir. 2013).

Title III of the ADA grants a private right of action "to any person who is being subjected to discrimination on the basis of disability" in violation of the statute, or "who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of section 12183 of this title."  42 U.S.C. § 12188(a)(1).  The provision permits individuals to seek injunctive relief but not damages.  *See id.*; *Krist v. Kolombos Rest., Inc.*, 688 F.3d 89, 94 (2d Cir. 2012).  In this context, the Second Circuit has "found standing (and therefore an injury in fact) where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [business] to plaintiff's home, that plaintiff intended to return to the subject location."  *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013) (citing *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008)).  Put another way, "[c]ourts considering ADA claims have found that disabled plaintiffs who had encountered barriers at restaurants, stores, hotels, or stadiums prior to filing their complaints have standing to bring claims for injunctive relief if they show a plausible intention

or desire to return to the place but for the barriers to access." *Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, 2003 WL 1751785, at *7 (S.D.N.Y. Apr. 2, 2003).

The barrier giving rise to standing must be one of which the plaintiff has "actual knowledge," and the "majority of cases suggest that 'actual knowledge' . . . comes from the plaintiff personally witnessing the alleged accessibility issue." *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 255 (S.D.N.Y. 2018) (collecting cases).  That said, "once a plaintiff establishes standing with respect to one barrier in a place of public accommodation, that plaintiff may bring ADA challenges with respect to all other barriers on the premises that affect the plaintiff's particular disability," and a plaintiff with standing "need not personally encounter each ADA violation . . . to seek its removal." *Kreisler*, 731 F.3d at 188–89.  In sum, a plaintiff seeking injunctive relief under Title III must demonstrate actual knowledge of at least one accessibility barrier that affects her disability, but once she has done so, she may also seek to remedy ADA violations affecting her specific disability that she has not personally encountered.

Defendants argue that Plaintiff has not suffered an injury in fact because she has no actual knowledge of the barriers alleged in her complaint.  Dkt. No. 59 at 7–9.  Plaintiff testified at her deposition that on a single occasion "two, three, years, five years, whatever" when she went to the Store, she wanted to go to the second floor to purchase baby clothes and was told by an unidentified individual that there was an elevator but that she would not "be able to get to it." Dkt. No. 55-5 at 12–14; Dkt. No. 65-2 at 40:4–41:6.  Plaintiff further states that she has visited the Store "several times over the years" and "would like to shop on the second floor but could not figure out how to get to that floor because she encountered steps and there is no signage to show her where the ramp was located." Dkt. No. 64 at 8–9.  Even during her deposition, Plaintiff stated that "to [her] knowledge there is no elevator ramp." Dkt. No. 65-2 at 71:10–11.

Given Plaintiff's conceded lack of knowledge regarding the elevator and ramp, Defendants are correct that Plaintiff cannot premise her standing on a claim that the condition of the ramp route to the second floor violates the ADA, including whether the handrails or elevator buttons are at the correct heights.

At the same time, Plaintiff does have actual knowledge of other barriers at the Store. At bottom, Plaintiff contends that Defendants have made it unreasonably difficult for her to figure out how to access the second floor of the Store and that this has interfered with her full and equal enjoyment of the facility. That allegation goes to her claim pleaded in the complaint that any accessible route to the second floor that does exist is not in the same area as the general circulation path. There is evidence to support that Plaintiff was aware of that barrier and that it affected her disability. As Plaintiff puts it, "[t]he fact that she ha[s] not seen the elevator or the ramp to get to the second floor proves her point . . . that the ramp and elevator are not in the general circulation path because they are impossible to find (and lack signs directing one to the ramp)." Dkt. No. 64 at 9. That evidence is sufficient to establish past injury for standing purposes. To the extent Defendants respond that Plaintiff has not been injured because the accessible route is in the same area as the general circulation path and complies with all applicable regulations, "[t]he Second Circuit has warned of this very move, cautioning 'against arguments that would essentially collapse the standing inquiry into the merits, and [against] attempts to conflate the threshold question of the plaintiff's standing under Article III with the question of whether he has a valid claim on the merits.'" *Marsh & McLennan Agency LLC v. Williams*, 2025 WL 1265817, at *8 (S.D.N.Y. Apr. 30, 2025) (quoting *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 212 (2d Cir. 2020)).

Plaintiff has also satisfied the remaining two *Kreisler* factors used to assess standing in Title III cases.  It is reasonable to infer that Defendants are not willing to situate an accessible route any closer to the general circulation path than the ramp already is (that is what Plaintiff seeks to accomplish with this lawsuit), and it is further reasonable to infer that Plaintiff intends to return to the Store in the future given her numerous prior visits (including in the last year), the Store's proximity to her home (approximately four blocks), and her patronage of another establishment in the same mall.  *See Kreisler*, 731 F.3d at 188 (noting that the plaintiff's residence "several blocks" from the defendants' establishment and his visits to other nearby restaurants supported standing); *Brown v. Lay Win Herbal, Inc.*, 2025 WL 3274560, at *6 (S.D.N.Y. Nov. 24, 2025) (same with respect to plaintiff who lived "only blocks away" from the defendants' store), *report and recommendation adopted*, 2025 WL 3633500 (S.D.N.Y. Dec. 15, 2025); *see also Feltzin v. 183 South Wellwood Ave. Corp.*, 2017 WL 6994213, at *3–4 (E.D.N.Y. Oct. 25, 2017) (finding plausible intent to return where, even though plaintiff lived in Florida and facility was in New York, plaintiff grew up in same county as facility, regularly visited friends and family in the area, and stated he would visit within ninety days of removal of barriers).

Plaintiff therefore has demonstrated standing at this stage. [2]

---

[2] In contesting standing, Defendants call into question Plaintiff's credibility and allege certain inconsistencies in her testimony regarding her prior visits to the Store and her intent to return in the future.  *See* Dkt. Nos. 54 at 8–9; Dkt. No. 69 at 2–4.  Such questions are not well suited for resolution on summary judgment.  "It is well settled," however, "that '[a] plaintiff's burden to demonstrate standing increases over the course of litigation,'" and "[a]s with any other matter on which the plaintiff bears the burden of proof, each element of standing must be supported 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 119 (2d Cir. 2025) (citations omitted).  A plaintiff's burden to demonstrate standing continues at trial. *Barrows v. Becerra*, 24 F.4th 116, 127 (2d Cir. 2022).  Thus, a finding of standing at this stage based on the summary judgment record does not foreclose a different conclusion at trial.

## II.     Liability Under the ADA

Although Plaintiff has standing to bring her ADA claim, there is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law on the federal claim.

### A.     The Pleadings

Before proceeding to a discussion of Plaintiff's claims on the merits, the Court must first determine which allegations are properly before it. As indicated above, Plaintiff's expert alleges certain accessibility violations discovered upon inspection of the Property that were not pleaded in the complaint. Dkt. No. 57 ¶ 21. Defendants assert that the alleged violations have been remediated or are in the process of being remediated. *Id.* ¶ 22. They further contend that they had insufficient notice regarding the additional barriers identified by Plaintiff's expert and that Plaintiff should have amended her complaint if she wished the barriers to be considered in this case. Dkt. No. 54 at 1 n.1. Plaintiff herself appears to acknowledge as much, as the complaint states that "[n]otice is . . . given that Plaintiff *intends on amending the Complaint* to include any violations discovered during an inspection that are not contained in this Complaint." Dkt. No. 1 ¶ 26 (emphasis added).

Defendants did not have notice that Plaintiff would challenge in this case any alleged violations except those with respect to the issue of whether there is an accessible route from the first floor to the second floor (and the staff service counters). The only accessibility issue supported with any factual specificity in the complaint is Plaintiff's allegation that she cannot go between the first and second floors without leaving the Store. Dkt. No. 1 ¶¶ 41–42. Plaintiff understands the substance of her case similarly. During her deposition, she confirmed that the complaint's allegations regarding the lack of an accessible route in the Store refer to the inaccessible elevator and ramp. Dkt. No. 65-2 at 70:11–71:18. She made no mention in her deposition of issues such as the height of elevator buttons or the handrail along the ramp, and

12

when asked if there was any evidence supporting her accessibility allegations other than that mentioned in her deposition, she replied "No." *Id.* at 100:5–10.

Plaintiff's Rule 56.1 statement further underscores that the expert's allegations largely fall outside the scope of the complaint. Under the heading "Property Violations Remaining," the 56.1 statement asserts that the expert report "elaborates on the alleged accessibility violations in the Complaint," Dkt. No. 68 at 6, but it then cites only three out of the more than twenty alleged violations detailed in the expert report, implicitly acknowledging that the others have no basis in the complaint, *compare id.* at 6–7, *with* Dkt. No. 66-1 (Appendix A). One of the three allegations is that the designated accessible route from the first-floor sales area to the elevator landing is not in the same area as the general circulation path. As explained above, that contention does go to the sum and substance of the complaint and to Plaintiff's testimony. But the other two allegations do not. They relate to whether a gap between the elevator car platform sill and the edge of the hoist way is a quarter inch too large, and whether the emergency controls within the elevator car are at an appropriate height. Dkt. No. 68 at 7. The complaint asserts, however, *that there is no elevator* within the Store creating an accessible route between the first and second floors. Dkt. No. 1. ¶ 23. Plaintiff reiterated that she believed as much during her deposition. Dkt. No. 65-2 at 71:12–17. Defendants therefore did not have reasonable notice that these allegations formed the basis for Plaintiff's case. To be sure, Plaintiff cites certain ADA regulations in her complaint, including ones governing elevator specifications. *Id.* But at least in this circumstance, where the relevant regulations contain numerous and varying requirements, simply citing these provisions did not put Defendants on notice regarding the nature of the claim. *See Palisades Ests. EOM, LLC v. County of Rockland*, 2025 WL 1295333, at *52 (S.D.N.Y. May

13

5, 2025) ("More than rote recitation or tracking of statutory language is required to place the Defendants on notice of the claim.").

In her summary judgment papers, Plaintiff offers no response to Defendants' argument that they had insufficient notice regarding the expert's additional allegations and that these allegations should not be considered. *See* Dkt. No. 64. Absent a response from Plaintiff regarding issues of notice and prejudice (or briefing on the substance of the additional and disputed allegations), the Court agrees that the alleged barriers not pleaded in the complaint should not be considered at this stage. *See Lopez v. Gap, Inc.*, 883 F. Supp. 2d 400, 413 (S.D.N.Y. 2012) ("It is 'well settled that a Court should not on summary judgment consider factual allegations and legal theories not raised in the complaint.'" (citation omitted)); *see also Woods v. City of Rome*, 2024 WL 3377453, at *19–20 (N.D.N.Y. July 11, 2024) (holding that plaintiff did not state ADA claim with respect to accessibility violations raised in an expert report but not in the complaint); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908 (9th Cir. 2011) (same). Indeed, even if Plaintiff might have standing to challenge barriers she has not personally encountered, *see Kreisler*, 731 F.3d at 188–89, that does not mean that she has satisfied the Federal Rules of Civil Procedure, which serve distinct interests. Regardless of Plaintiff's standing, Defendants must still have adequate notice of the claims against them, and they must not be prejudiced by the addition of claims not pleaded in the complaint. *See Woods*, 2024 WL 3377453, at *20 (distinguishing between standing and fair notice under the Federal Rules with respect to a plaintiff's ability to pursue accessibility barriers raised only in an expert report).

On January 27, 2026—over seven months after Plaintiff's expert report, over two months after Defendants filed their opening summary judgment brief, approximately two weeks after oral argument on the motion for summary judgment, and on the eve of trial—Plaintiff,

apparently acknowledging her oversight, filed a motion to amend the complaint. Dkt. No. 80–81. That motion is too little too late and does not change the calculus. Defendants specifically raised this issue in their opening summary judgment brief, and Plaintiff abandoned any opposition by failing to respond. *See Dudek v. Nassau Cnty. Sheriff's Dep't*, 991 F. Supp. 2d 402, 410 (E.D.N.Y. 2013) ("[Plaintiff] does not address Defendants' argument in his opposition brief and has therefore abandoned all objections to it."). Defendants would have had an opportunity to respond to Plaintiff's opposition in their reply brief, but Plaintiff deprived them of that opportunity by not addressing the issue of amendment in any manner. Amendment is doubly improper because Plaintiff has provided no justification whatsoever for the substantial delay. Plaintiff could have moved to amend nearly seven months ago but chose not to do so. Defendants reasonably relied on that omission at the summary judgment stage by not addressing the expert's additional allegations. They would be prejudiced if, only after moving for summary judgment and after the completion of all briefing and oral argument, Plaintiff could simply remove the legal and factual terrain out from under them. *See Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, 2025 WL 2781280, at *29 (S.D.N.Y. Sept. 30, 2025) (holding that defendants were prejudiced in presenting their case at the summary judgment stage where they failed to brief an issue not raised in the complaint); *cf. Turner v. Shinseki*, 824 F. Supp. 2d 99, 123 (D.D.C. 2011) ("[A] number of other courts confronting similar situations have taken the position that a complaint was constructively amended when the parties had *fully briefed* an issue that was not necessarily raised in the complaint." (emphasis added)).

The Court therefore disregards Plaintiff's untimely and abandoned motion to amend. The only issue properly before the Court now is whether the designated accessible route from the first floor to the second floor is in the same area as the general circulation path.

15

### B.    The Accessible Route Is in the Same Area as the General Circulation Path.

"Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001). "Congress noted that the many forms such discrimination takes include 'outright intentional exclusion' as well as the 'failure to make modifications to existing facilities and practices.'" *Id.* (quoting 42 U.S.C. § 12101(a)(5)). Title III of the ADA "prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations." *Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128, (2005). It provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To establish liability under Title III, a plaintiff must demonstrate that (1) she has a disability; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against her within the meaning of the statute. *See Krist*, 688 F.3d at 94–95.

Congress authorized the Attorney General to promulgate regulations implementing the directives of Title III. 42 U.S.C. § 12186(b). The Department of Justice ("DOJ") regulations, promulgated pursuant to that authority, are based on ADA Accessibility Guidelines ("ADAAG") published by the Architectural and Transportation Barriers Compliance Board. 28 C.F.R. pt. 36. These guidelines, the "1991 Standards for Accessible Design," now appear in Appendix D to 28 C.F.R. part 36. *See* 28 C.F.R. § 36.104. In 2010, the DOJ revised its ADA regulations. Without abrogating the 1991 Standards, it promulgated new regulations—the "2010 Standards"—that adopted newer ADA Accessibility Guidelines. *See id.* The 2010 Standards appear in Appendices B and D to 36 C.F.R. part 1191, and also include the requirements of subpart D of

16

28 C.F.R. part 36.  *Id.*  Public accommodations that were constructed or altered after March 15, 2012 must comply with the 2010 Standards.  *See id.* § 36.406(a).

Any item that is inconsistent with the ADA Standards constitutes a prima facie architectural barrier.  *Chapman v. Pier 1 Imps. (U.S.) Inc.,* 631 F.3d 939, 947 (9th Cir. 2011) ("Because the ADAAG establishes the technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA.").  "A plaintiff can establish discrimination in violation of the ADA by showing that the defendant violated the applicable accessibility standards set forth in the ADA Accessibility Guidelines ('ADAAG')."  *Francis v. 805 Columbus LLC*, 2019 WL 13115209, at *3 (S.D.N.Y. Mar. 7, 2019) (quoting *Lemmons v. Ace Hardware Corp.*, 2014 WL 3107842, at *7 (N.D. Cal. July 3, 2014)); *see also Shariff v. Beach 90th St. Realty Corp.*, 2013 WL 6835157, at *4 (E.D.N.Y. Dec. 20, 2013) ("The Court looks to the [ADAAG] to determine whether the alleged architectural barriers constitute discrimination under the ADA.").  "Full compliance with the ADA Standards, on the other hand, 'act[s] as a safe harbor' for defendants."  *Kohler v. In-N-Out Burgers*, 2013 WL 5315443, at *2–3 (C.D. Cal. Sept. 12, 2013) (quoting *Indep. Living Res. v. Or. Arena Corp.,* 982 F. Supp. 698, 727 (D. Or. 1997)).  "A facility that adheres to the Standards, in other words, will not be subject to liability under the ADA for any architectural elements covered by the Standards."  *Id.*  The interpretation of the ADA Standards presents a legal question for the court to decide.  *See S.F. ex rel. K.F. v. Sch. Dist. of Upper Dublin*, 2021 WL 1979501, at *9 (E.D. Pa. May 18, 2021); *cf. Francis*, 2019 WL 13115209, at *4.

The parties agree that Plaintiff satisfies the first two elements of Title III and that only the third element—whether Plaintiff has been discriminated against within the meaning of the

17

statute—is at issue here.  Dkt. No. 54 at 7.  They further agree that the 2010 ADA Standards govern this dispute.  Dkt. No. 57 ¶ 1.  As relevant here, Section 206.2.4 of the 2010 Standards, which is entitled "Spaces and Elements," provides that "[a]t least one accessible route shall connect accessible building or facility entrances with all accessible spaces and elements within the building or facility which are otherwise connected by a circulation path unless exempted."  The Advisory notes to this Section summarize: "Accessible routes must connect all spaces and elements required to be accessible including, but not limited to, raised areas and speaker platforms."  2010 Standards § 206.2.4 Advisory.

Section 206.3 governs the location of these accessible routes and provides that they "shall coincide with or be located in the same area as general circulation paths.  Where circulation paths are interior, required accessible routes shall also be interior."  The Advisory adds:

> The accessible route must be in the same area as the general circulation path.  This means that circulation paths, such as vehicular ways that are designed to be routinely used by pedestrians must be accessible or have an accessible route nearby.  Additionally, accessible vertical interior circulation must be in the same area as stairs and escalators, not isolated in the back of the facility.

*Id.* § 206.3 Advisory.

The 2010 Standards define "circulation path" as "[a]n exterior or interior way of passage provided for pedestrian travel, including, but not limited to, walks, hallways, courtyards, elevators, platform lifts, ramps, stairways, and landings."  *Id.* § 106.5.  Terms not defined by the regulations "shall be as defined by collegiate dictionaries in the sense that the context implies."  *Id.* § 106.3.  Two relevant terms here—"same" and "nearby"—are not defined by the regulations and therefore take their ordinary dictionary meanings as implied by context.  As another court has noted, Merriam Webster's defines "same" as "resembling in every way," "conforming in every respect," and "corresponding so closely as to be indistinguishable," while "nearby" is defined as "near at hand" and "close by."  *See S.F. ex rel. K.F.*, 2021 WL 1979501, at *19.

18

Plaintiff argues that under these definitions, the designated accessible route fails to qualify as in the same area as the general circulation path because the accessible route is both much longer than, and qualitatively too different and separate from, the general circulation path. Dkt. No. 64 at 10–16; *see S.F. ex rel. K.F.*, 2021 WL 1979501, at *18 (noting that the issue of whether an accessible path complied with Section 206.3 turned on whether the accessible route was "separate from and longer than the general circulation paths used by able-bodied persons").[3]

Turning first to the length of the accessible route, the parties disagree on how to measure the relevant distances. Plaintiff argues that "[t]he starting point of the general circulation route and the purported accessible route to the elevator landing is at the bottom of the stairs," and that from that vantage point, "[t]he ramped route from the first-floor sales area to the elevated elevator landing does not coincide with the general circulation path and is not readily apparent from the path," Dkt. No. 64 at 5; *see also id.* at 11 ("The general circulation path, in this case, is the stairway leading to the elevator which then takes someone to the second floor"). Based on this assumption, Plaintiff's expert asserts that a customer who is using a wheelchair and who is at the bottom of the stairs by the elevator landing would have "to backtrack to the front of the store, then turn left to the corner of the store, then turn left to go . . . up the ramp (which is isolated from the sales floor by a non-transparent solid wall), and then turn left to travel through one set of fire doors, the staircase landing, and another set of fire doors to ultimately arrive at the elevator." Dkt. No. 66 ¶ 10. An able-bodied customer who is at the foot of the stairs to the elevator platform would have to travel only 17 feet and 6 inches to reach the elevator; the same customer who is disabled and at the foot of the stairs would have to travel 133 feet. *Id.* ¶¶ 10–11.

---

[3] The parties discuss the comparative lengths of the two paths, so the Court does too. The Court notes, however, that the regulation is at least ambiguous as to whether the length of an accessible path bears on whether it is in the "same area" as the general circulation path.

Defendants argue that the correct starting point for comparison is instead from the Store's entrance, not from the foot of the stairs.  Dkt. No. 54 at 10.  From that perspective, the difference is around thirty feet, as demonstrated by the following floor map:



Dkt. No. 66-2 at 14; Dkt. No. 54 at 10.  Defendants further cite caselaw to the effect that even a 200-foot difference between accessible routes and general circulation paths does not compel a finding that two paths are not in the same area.  Dkt. No. 54 at 10 (citing *Sutton v. Mass. Mut. Life Ins., Co.*, 2020 WL 5765693, at *4–5 (S.D.N.Y. Sept. 27, 2020)).

The Court agrees with Defendants that the correct starting point is the entrance to the Store.  That is apparent from the language of the 2010 Standards.  Section 206.2.4 provides that there must be "[a]t least one accessible route" and that such accessible route "shall connect accessible building or facility *entrances* with all accessible spaces and elements within the building or facility which are otherwise connected by a circulation path."  2010 Standards § 206.2.4 (emphasis added).  All that is required is that there be one accessible route connecting the facility entrances with all accessible spaces and that it be in the same area as a general

20

circulation path.  If a general circulation path connects the facility entrance to an accessible space, there must also be an accessible route doing the same in the same area.

Once the ADA standards are properly understood, it is apparent that there is no genuine issue of material fact regarding the comparative distances between the two routes.  It is likewise clear that the accessible route is neither so far from the general circulation path nor so much longer than it to qualify as not in the same area.  Plaintiff argues in a footnote that even a thirty-foot difference could be too long, but the cases she cites for that proposition do not support such a conclusion.  *See* Dkt. No. 64 at 12 n.3 (citing a case involving an accessible route "150 feet away which crosses another vehicular way," *see Celeste v. E. Meadow Union Free Sch. Dist.*, 373 F. App'x 85, 90 (2d Cir. 2010) (summary order), and one involving a route that required a wheelchair user to travel 680 feet more than an able-bodied person, *see Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 655 F. Supp. 2d 553, 566 (E.D. Pa. 2009), *aff'd*, 635 F.3d 87 (3d Cir. 2011)).

That brings the Court to Plaintiff's alternative arguments.  Plaintiff does not rely solely on distance in arguing that the two paths are not in the same area.  Dkt. No. 64 at 12 n.3 ("The length disparity is at least one factor to consider in order to determine that the route is not in the area of the general circulation route.").  She also contends that the alternative route is inaccessible because it is behind a merchandise wall and not readily apparent from the general circulation path, is located to the side of the store, and takes individuals through "an intervening area." *Id.* at 10–12.  In Plaintiff's view, these features make the accessible path sufficiently qualitatively different and separate from the general circulation route so as not to qualify as in the same area.  *Id.* at 10–12.  Defendants respond that there are "no prohibitions against placing the accessible route behind a wall, the accessible route not being immediately visible, or

21

including travel through open fire doors as part of the accessible route." Dkt. No. 69 at 5. Defendants thus suggest that so long as an accessible route is sufficiently proximate to the general circulation route, it is in the "same area" under the meaning of the regulations.

In analyzing these competing interpretations of Section 206.3, the Court finds instructive the United States District Court for the Eastern District of Pennsylvania's decision in *S.F. ex rel. K.F. v. School District of Upper Dublin*, 2021 WL 1979501 (E.D. Pa. May 18, 2021). *S.F.* is one the few cases to interpret Section 206.3 of the 2010 Standards. There, the court was presented with the question of whether a wheelchair accessibility route from the back of a middle school auditorium to the front of the auditorium complied with the ADA. *Id.* at 18. Able-bodied students could access the auditorium's front seats by walking from the back of the auditorium down the aisles, whereas students in wheelchairs had to exit the auditorium through the rear doors, make two left turns, travel down a hallway roughly parallel to the aisles inside the auditorium but separated from the auditorium by lavatories, storage rooms, and offices, make two more left turns to reenter the auditorium through the right stage door, proceed to the stage, and take a lift from the stage down to the front seats. *Id.* at 3, 15, 19 n.32, 23. The court concluded that the accessible route did not comply with the regulations:

> While the circulation path and the proposed accessible path reach the same place, it cannot fairly be said that they reach that place through paths that are either in the same area or nearby each other, using the plain and commonly recognized meaning of those terms. One takes students from the rear entrance down the aisles, and the other takes students from the right stage entrance to the platform lift. These entrances are at a significant distance from each other, and thus require non-disabled and wheelchair students to take different paths to the auditorium from their classroom or other starting point. The proposed accessible route is clearly not equivalent, nor can it be fairly said to promote equivalency.

*Id.* at 19. Not only did the two routes use different entrances "a significant distance from each other," but the accessible route also took students down a hallway that was separated from the auditorium by different kinds of rooms. *Id.* at 19 n. 32, 23.

22

The Court is persuaded by *S.F.*'s reasoning that two routes can be sufficiently qualitatively different such that they are not in the "same area" under Section 206.3.  The Court therefore rejects Defendants' suggestion that "the fact that an accessible route is obstructed from view, not signed, requires traveling a further distance, navigates through intervening spaces, or is otherwise not provided in the most integrated setting" is irrelevant in determining whether an accessible route violates the ADA.  Dkt. No. 66-2 at 22.  Defendants assert that "[t]he litmus test for compliance rests only on whether compliance with the Section 206.3 has been achieved."  *Id.*  But whether a route achieves compliance with Section 206.3 depends at least in part on issues such as whether it navigates through intervening spaces and the character of those spaces.

That conclusion is supported by the language of the regulations read both in isolation and as a whole.  Dictionaries define "area" as based in part around function.  Merriam Webster's, for instance, defines "area" partly as "a particular extent of space or surface or one *serving a special function*."  *Area*, https://www.merriam-webster.com/dictionary/area (last visited Jan. 29, 2026) (emphasis added).  The regulations likewise repeatedly define areas based on their intended purposes or uses.  The regulations refer, for example, to an "assembly area," which is defined as a "building or facility, or portion thereof, *used for the purpose* of entertainment, educational or civic gatherings, *or similar purposes*."  2010 Standards § 106.5 (emphasis added).  They also refer to an "employee work area," defined as "[a]ll or any portion of a space *used* only by employees and *used* only for work."  *Id.* (emphasis added).  Elsewhere, the regulations emphasize that areas of a facility may contain different "primary functions," and that term is defined to mean "a major activity for which the facility is intended."  23 C.F.R. § 35.151(b)(4)(i).  "Areas that contain a primary function include, but are not limited to, the dining area of a cafeteria, the meeting rooms in a conference center, as well as offices and other

23

work areas in which the activities of the public entity using the facility are carried out." *Id.*  It is apparent from this language that an "area" is not defined just (or even primarily) by the amount of physical space that it occupies but by the uses to which it is put.  If the uses are uniform, then the space forms one area.  If different parts of the same physical location are devoted to different uses, then that location may contain more than one area.

All of this is to say that whether two routes are in the "same area" must turn, at least to some extent, on a consideration of the character or function of the spaces.  For example, a designated accessible route that takes a wheelchair user through a cafeteria or dining area, while others walk through a meeting room or conference center, might be sufficiently different to constitute separate areas, even if they share a close physical proximity.  The ADA and its implementing regulations are designed to "remedy widespread discrimination against disabled individuals," *PGA Tour, Inc.*, 532 U.S. at 674, and forcing disabled individuals to traverse paths that take them through different spaces with different uses implicates that overarching goal. Recognizing this fact does not mean that the Court is creating a stand-alone ADA claim wherever an accessible route provides customers with an "inferior experience," as Defendants contend.  *See* Dkt. No. 69 at 6.  Instead, this common-sense observation bears only on what it means for two paths to be in the "same area" under the regulations.

Although the Court agrees with *S.F.*'s analysis of the law, it reaches a different conclusion based on the particular facts of this case.  The differences with *S.F.* are several.  For one, as previously explained and in notable contrast to *S.F.*, the two routes in this case neither start in different places at different entrances nor are positioned a significant distance from each other.  That is relevant to the analysis.  Plaintiff contends that the accessible path here takes wheelchair users through an intervening space, but there are again important differences with

*S.F.* In that case, the hallway was concededly outside the auditorium and took students by offices, lavatories, and storage rooms. 2021 WL 1979501, at *19 n. 32, 23. The accessible route here, although positioned behind a wall from the main floor, does not take users by or through analogous spaces. Plaintiff asserts that the ramp passes through "a fire door, a stairwell and another fire door (all of which can be closed)," Dkt. No. 64 at 2, but the photos of the route provided in the parties' joint statement of undisputed material facts show the doors open, and Plaintiff offers no evidence that the doors are ever closed during store operating hours, *cf. Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir.) ("When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.").





Dkt. No. 57 ¶ 9.  Plaintiff has therefore provided insufficient evidence suggesting that the

stairwell is an enclosed intervening space—it is simply a continuation of the hallway.  No

reasonable jury could find that passing by a set of stairs—ones that are also located near the

elevator and the general circulation path, *see* Dkt. No. 66-2 at 14 (floor map)—fundamentally

transforms the accessible route into a different area in the same way that passing through an

office or a cafeteria or another similar space might.

There is also no evidence that the ramp hallway serves a function other than providing

users with access to the platform.  That "function" cannot be understood as serving a different

one from the circulation path on the store floor and thus cannot alone make out an ADA

violation.  A ramp by definition will be set off from the space of which it is a part whether by

elevation, guardrails, or, as in this case, a wall, unless it coincides with the general circulation

path.  That does not mean that the ramp violates the "same area" requirement.  What would

potentially run afoul of the requirement is if, in order to enter the ramp, an individual had to pass through a different area than the one used by able-bodied persons.  Similarly, the ramp might fail the "same area" requirement if it took users through a space that serves a different function than the space that the general path traverses.  That is not the case here.

Citing the Advisory note to Section 206.3, which states that "accessible vertical interior circulation must be in the same area as stairs and escalators, not isolated in the back of the facility," Plaintiff states that the ramp is "isolated" because it is behind a wall.  Dkt. No. 64 at 5, 12.  She acknowledges, however, that locating a ramp behind a wall is not a per se ADA violation.  *Id.* at 15.  She contends that the ramp's location behind a wall *combined* with the fact that it "starts at a different point than the barrier (the stairway)" and "requires backtracking" demonstrate that it is inaccessible.  *Id.*  But the Court has already explained that, viewed from the correct starting point of the Store's entrance, the two routes are not a significant distance from one another and do not require backtracking.  Plaintiff has further suggested that an accessible route must always be visible from the general circulation path such that the accessible route would violate the ADA if it could not be seen from all locations from which the general circulation path can be seen.  But that argument, which finds no home in the language of the relevant regulations, proves too much.  It would mean, for example, that an accessible route would need to be visible even when an individual is in between tall clothing racks in a store or in a grocery aisle with shelves above eye-level.

Based on the totality of the circumstances, and considering the various factors both in isolation and conjunction, the Court finds as a matter of law that the designated accessible path is in the same area as the general circulation path under Section 206.3.  Plaintiff's ADA claim therefore must be dismissed.

III.    **State and City Claims**

Plaintiff argues that separate and apart from her ADA claim, she is entitled to relief under state and city laws, which she says are governed by different legal standards. Dkt. No. 64 at 17–20. She seeks compensatory and punitive damages under these laws, and the parties disagree about whether she is entitled to that relief. *Id.* at 22–25; Dkt. No. 69 at 9–10.

The Court need not resolve this dispute, as the sole federal claim has been dismissed, and the Court declines to exercise supplemental jurisdiction over the remaining state and city claims based on principles of judicial economy, convenience, and fairness. *See Murphy v. Regal Cinemas, Inc.*, 2022 WL 17821218, at *2 (S.D.N.Y. Dec. 20, 2022) ("Because the Court is dismissing Plaintiff's ADA claim for lack of Article III standing, it declines to exercise supplemental jurisdiction over the state and municipal law claims included in Plaintiff's Complaint."); *Nachshen v. BPP ST Owner LLC*, 2021 WL 5042855, at *3 (S.D.N.Y. Oct. 29, 2021) (doing the same and collecting cases); *McCrain v. Metro. Transp. Auth.*, 2020 WL 1285634, at *20 (S.D.N.Y. Mar. 18, 2020) ("Here, declining jurisdiction over Plaintiff's state and municipal claims would not disserve the principles of judicial economy, convenience, or fairness. The Court has determined that Defendants are entitled to summary judgment on all of the federal claims. Although the Court has analyzed Plaintiff's ADA claims, it 'has not yet invested the resources necessary to resolve the NYCHRL [and NYSHRL] claims, which require application of a different standard with which the state courts are more familiar.' . . . And while extensive discovery has taken place in this action, that work is equally applicable in state court." (citation omitted)).

These claims are accordingly dismissed without prejudice to refiling in state court.

28

**CONCLUSION**

The motion for summary judgment is GRANTED.  Plaintiff's ADA claim is

DISMISSED WITH PREJUDICE, and her state and city claims are DISMISSED WITHOUT

PREJUDICE.

The Clerk of Court is respectfully directed to close Dkt. No. 53 and to enter judgment in

this case.

SO ORDERED.


Dated: January 30, 2026
      New York, New York                           LEWIS J. LIMAN
                                       United States District Judge

29